50 CCPA

**Application of Kenneth L. BERRY.**

**Patent Appeal No. 6932.**

United States Court of Customs
and Patent Appeals.
April 25, 1963.

---

C. Harold Herr, Wilmington, Del. (Frederick Schafer, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the Board of Appeals decision affirming the rejection of claims 1 and 2 of appellant's patent application.[1]

The invention relates to crystalline aluminum oxide in the form of fibers, filaments and ribbons. The particular form of aluminum oxide in question is corundum or alpha-alumina. This mineral occurs widely in nature, but not in fibrous form. Appellant has disclosed a patentable method of producing the fibrous corundum,[2] and the sole question is whether the corundum product is patentable.

Claim 1 is illustrative and reads as follows:

"Corundum in a form having at least one dimension less than 50 microns and one dimension greater than 50 microns, the average ratio of the longest to the shortest dimension being at least 500:1."

The Board of Appeals affirmed the finding by the examiner that the product claims are unpatentable over the prior art reference. The reference relied on is:

Roiboul (Great Britain) 165,052 December 28, 1921.

The Roiboul reference shows a fibrous product drawn from a molten pool of "highly refractory mineral substances, such as alumina and silica." The reference, in referring to the prior art, points out that others had proposed a wheel or bobbin for drawing out glass threads from molten glass. In addition, Roiboul states, filaments of "silica, alumina and other refractory minerals" had been made by drawing a molten drop of the mineral carried on the end of a rod, but these filaments were too irregular in diameter and the maximum length was only twenty meters, only half a meter of which was usable. The invention in Roiboul is the combination of a novel crucible of a copending application and a high speed wheel or bobbin to draw fibers "to 100 kilometres, or more." The specific composition of the raw materials is not defined, but "may be a mineral of either the silica group, or of the alumina group." The thread of the final product is said to be amorphous and not crystalline.

---

1. Serial No. 696,595, filed November 15, 1957, for "Fibrous Corundum and its Preparation."

2. Method claims 4 to 8 are allowed.

The Board of Appeals found "no patentable distinction between the claimed filaments and those of Roiboul." They said:

> "In our opinion, Roiboul teaches a product having the dimensions set forth in appellant's claims and exhibiting the properties desired of the claimed product. Although Roiboul indicates the alumina filaments not to have crystal structure, and to be amorphous, the remaining description of the product coincides with that of appellant's claimed composition. We note, at this point, the lack of any limitation in the claims that the product be crystalline, and we find no evidence requiring crystalline structure as a prerequisite for the desired properties."

Appellant argues that the limitation of crystalline is inherent in the claim since the word "corundum," by definition, is *crystalline* alpha-alumina. Moreover, while he considers it redundant, appellant offered to amend the claims to crystalline if the board so desired. A number of textbook references to "corundum" defining it as crystalline were placed of record in appellant's request for reconsideration by the board. On reconsideration, the board stated that the term "corundum" does not describe the product "in such manner as to differentiate over the product actually obtained by Roiboul, even though the latter may be described as being amorphous." From the opinions of the board, it seems clear that they accept the proposition that alpha-alumina (corundum) is crystalline and not amorphous, as argued by appellant. However, it is not clear whether they affirmed on the basis that Roiboul teaches corundum in spite of what the reference says of crystallinity, or whether the inherent limitation of crystallinity is merely an obvious variation over the amorphous alumina of Roiboul contributing no unobvious properties. The statement by the board that: "The Roiboul filaments are produced from alumina, fused at high temperatures known to form alpha alumina on solidification." tends to indicate a belief that Roiboul had a crystalline product without knowing it. The rest of the statements, however, indicate a reliance on the requirement of 35 U.S.C. 103 that the subject matter must be non-obvious though it is not identically disclosed or described in the prior art. The board apparently found the claimed subject matter obvious in the absence of a direct comparison with the products prepared by Roiboul in order to support the "advantages" attributed to appellant's corundum.

Appellant argues that a direct comparison of the Roiboul alumina with appellant's corundum is impossible because Roiboul did not produce alumina fibers. Appellant submits that the asserted equivalency of silica and alumina is erroneous, and that Roiboul merely prepared silica fibers and incorrectly assumed that alumina fibers could be prepared in the same manner. Fibrous alumina cannot, it is argued, be obtained by the method of Roiboul, which requires a glass-forming oxide such as silica in order to be operable. To support this contention, an affidavit by John B. Lambert was incorporated into the record. The affidavit had been submitted in another application not concerned with corundum or its preparation, but the Roiboul reference was part of the subject matter of the affidavit. In referring to the Roiboul reference, the affiant attempted to draw fibers from molten alumina of five different types. Platinum and tungsten wires were dipped into the molten alumina and withdrawn. "In no case was there even a tendency for the melt to draw, and no fibers were obtained." The explanation given by affiant for this is:

> "It is observed that it is obvious to any physical chemist that a material such as an inorganic material with a sharp melting point which readily crystallizes from its melt cannot be drawn to form fibers unless some means to prevent crystallization is found. Glass, for example, can be drawn because additions

are made to silica so that the resulting glass does not have a sharp melting point."

Though no fibers are formed, the five samples of alumina were "converted to corundum in every case except one," [3] according to the affidavit.

We are wary of affidavits offered to show that what a patentee states has been done cannot be done. The burden of proving inoperativeness of a patented invention is heavy. However, the affidavit is not offered to prove Roiboul inoperative for all purposes, but merely to prove that Roiboul did not produce fibrous corundum.

It seems clear from the record that Roiboul did not draw fibers of pure corundum. Roiboul did not purport to use corundum, and the affiant Lambert swore that he could not have drawn corundum. The evidence of record indicates that corundum was not used in Roiboul since at the temperatures employed a crystalline product would be obtained, whereas Roiboul specifically states that the fibers are not crystalline. Since Roiboul refers to prior art methods of drawing alumina fibers, it is clear that the patentee did not purport to be the first. Whether the method of Roiboul is inoperative insofar as alumina is concerned, or whether Roiboul used overbroad language in describing his invention, or whether additions to the alumina were present to broaden the melting temperature range, are questions that we need not decide. We merely decide that Roiboul did not draw fibrous corundum.

We note that the record shows the advance in the state of the art from the time of Roiboul, who grouped "silica, alumina, and other refractory minerals" together, to the time of the affiant Lambert, who drew distinctions between alpha-alumina, beta-alumina, gamma-alumina, alumina monohydrate, etc. There is an order of magnitude, so to speak, separating the state of the art at the

different times. Accordingly, the affidavit of Lambert is given relatively greater weight than if it were introduced merely to prove inoperativeness of a competing process. This is not to say that the affidavit is not without its drawbacks. We note that its purpose was to compare Roiboul to an entirely different fiber of different chemical composition and structure in a separate application from the one under consideration. We rely on the affidavit only for what is said with regard to the Roiboul reference.

Having found that Roiboul does not produce fibrous corundum, we must determine whether it is obvious to produce it under 35 U.S.C. § 103. There is nothing in the record to indicate that anyone had ever made fibrous corundum before appellant or had described how to make it. The worker having ordinary skill in the art knew nothing of fibrous corundum, so we cannot say that it would have been obvious to him to make corundum in the novel form.

The board stated that the "advantages" of fibrous corundum were argumentative and not supported by a direct comparison with the prior art. Even if there were no "advantages" in using fibrous corundum for the fibers of Roiboul, we do not believe that fibrous corundum is obvious to the worker having ordinary skill in the art. Moreover, the record does support appellant's contention that fibrous corundum may be used for filtering molten metals at 1500° C., whereas Roiboul states that his material "becomes pasty" at that temperature. It seems clear that at least some of the properties of appellant's product, e. g., crystalline structure and melting point, are different from those of Roiboul's product. Fibrous corundum is not obvious over the fibers of the prior art reference to Roiboul.

Accordingly, the decision of the Board of Appeals is reversed.

Reversed.

3. Beta-alumina, which is not pure aluminum oxide, was said to result from one sample.